**Law Offices of Carlos R. Barrios & Assoc. a P.C.**
Carlos R. Barrios 249654
510 West 6th Street Suite 1210
Los Angeles, CA 90014
Tel.: (213) 599-8414
Fax.: (888) 255-9710

Attorneys for Petitioner,
CARLOS ALEXANDER SOLANO IZAGUIRRE

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CARLOS ALEXANDER SOLANO IZAGUIRRE,<br><br>Petitioner,<br><br>VS.<br><br>MARKWAYNE MULLIN, Secretary, United States Department of Homeland Security; TODD BLANCHE, Attorney General of the United States; RODENY S. SCOTT, Commissioner, United States Customs and Border Protection; DAVID J. VENTURELLA, Acting Director, Immigration and Customs Enforcement; THOMAS GILES, Field Office Director for Los Angeles, U.S. Immigration and Customs Enforcement; EDDY WANG, Special Agent in Charge for Los Angeles, Homeland Security Investigations, U.S. Immigration and Customs Enforcement; of DESERT VIEWANNEX, in his/her capacity as warden of the DESERT VIEW ANNEX, and DOES 1 to 10, INCLUSIVE.<br><br>Respondents | Case No.<br><br>**VERIFIED PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241; REQUEST FOR IMMEDIATE RELEASE** |

# I.

# INTRODUCTION

1. Petitioner Carlos Alexander Solano Izaguirre ("Petitioner" or "Mr. Solano") respectfully petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging his continuing civil immigration detention at Desert View Annex in Adelanto, California.

2. This Petition does not ask the Court to disregard Petitioner's February 3, 2000 *in absentia* removal order, adjudicate the merits of his pending Motion to Reopen, or prematurely decide whether he ultimately possesses a path to lawful permanent residence through his United States citizen spouse. Those matters remain within the immigration system in the first instance. The constitutional question here is narrower: what presently justifies keeping Petitioner physically incarcerated while federal law itself stays execution of the removal order and while no neutral tribunal has determined that his continued imprisonment is necessary?

3. The distinction is critical because the legal posture of Petitioner's detention changed materially only seven days after ICE acquired custody.

4. On July 23, 2026, Petitioner voluntarily appeared with his United States citizen spouse for a scheduled USCIS interview concerning the Form I-130

Petition for Alien Relative she had filed on his behalf. ICE detained him at that Government-scheduled interview.

5. Petitioner does not predicate this Petition upon the categorical proposition that ICE necessarily lacked authority to take him into custody on July 23. At that moment, the Government possessed a decades-old in absentia removal order that remained administratively final on its face. The stronger and more precise constitutional question arises from what happened next.

6. On July 30, 2026, only seven days after his detention, Petitioner filed with the Harlingen Immigration Court a Motion to Reopen and Rescind the in absentia order based upon lack of notice. EOIR's own system confirms that the Harlingen Immigration Court received that motion on July 30 and that it remains within Immigration Judge jurisdiction. EOIR presently identifies no future hearing. Automated Case Information Carl…

7. Congress expressly prescribed the legal consequence of such a filing. Under 8 U.S.C. § 1229a(b)(5)(C), an in absentia order may be rescinded through a motion filed "at any time" where the noncitizen demonstrates lack of the notice required by 8 U.S.C. § 1229(a), and "[t]he filing of the motion to reopen described in clause (i) or (ii) shall stay the removal of the alien pending disposition of the motion by the immigration judge." See also 8 C.F.R. § 1003.23(b)(4)(ii).

8. Thus, whatever immediate removal purpose supported ICE custody on July 23 materially changed on July 30. Since that date, Respondents have been legally prohibited from executing the 2000 removal order while the Harlingen Immigration Court determines whether that order should be rescinded for lack of notice.

9. The stay does not itself vacate the removal order. It does not automatically convert Petitioner into a § 1226(a) detainee. And it does not guarantee that his Motion to Reopen will be granted. Petitioner does not contend otherwise.

10. It does, however, eliminate the premise that physical incarceration is presently necessary to accomplish an immediately executable removal. Petitioner has now spent more than two months imprisoned during a period in which federal law itself prevents Respondents from carrying out the order they invoke as the basis for post-order detention.

11. Section 1231(a)(6) does not authorize detention untethered from its regulatory purpose. In *Zadvydas v. Davis*, 533 U.S. 678, 689, 699 (2001), the Supreme Court construed that provision to authorize post-removal-period detention only for a period reasonably necessary to accomplish removal and held that "[o]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute."

12. Nor did *Zadvydas* create a six-month window during which every detention is conclusively lawful. *Clark v. Martinez*, 543 U.S. 371, 384 (2005), expressly cautioned against reading *Zadvydas* as authorizing detention up to the outer edge of constitutional concern without regard to the statute's purpose. The Central and Eastern Districts have accordingly recognized that an individual may challenge § 1231(a)(6) detention before six months where the circumstances demonstrate that continued custody has become unreasonable. See *Trinh v. Homan*, 466 F. Supp. 3d 1077, 1092–93 (C.D. Cal. 2020); *Jingqi X. v. Warden*, No. 1:26-cv-03871-TLN-SCR, 2026 WL 1833475 (E.D. Cal. June 25, 2026); *Martinez-Ayerdis v. Warden*, No. 1:26-cv-04380-DAD-AC (E.D. Cal. Sept. 11, 2026).

13. *Martinez-Ayerdis* is particularly instructive. There, the petitioner was subject to an approximately twenty-year-old in absentia removal order and had been detained for only four months. The court acknowledged that six months had not elapsed but rejected the Government's contention that detention therefore remained automatically reasonable. It emphasized that the Government had made no effort to execute the old order for more than two decades, did not establish danger or flight risk, provided no meaningful neutral custody process, and did not even argue that removal was reasonably foreseeable. The district court ordered immediate release.

14. Petitioner candidly acknowledges the contrary result in *L.M.P. v. Chestnut*, No. 1:26-cv-04673-JLT (E.D. Cal. July 2, 2026). There, Judge Thurston concluded that § 1231(a)(6) authorized detention of a person with a longstanding in absentia order despite a pending lack-of-notice Motion to Reopen and automatic statutory stay. But the petitioner had been detained for only approximately twenty days, a fact central to the court's conclusion that custody remained presumptively reasonable.

15. *L.M.P.* therefore identifies the statutory framework; it does not supply a perpetual safe harbor. Indeed, the later decision in *Martinez-Ayerdis* expressly held that detention shorter than six months can become unreasonable where the individualized circumstances disconnect confinement from § 1231's removal purpose.

16. Mr. Solano's case also contains a compelling individualized fact absent from ordinary post-order detention cases: ICE was able to take him into custody precisely because he voluntarily reported to USCIS for an immigration interview.

17. Petitioner did not flee when presented with immigration scrutiny. He did not ignore a Government appointment. He did not conceal his identity, residence, or marital relationship. He appeared, with his United States

citizen spouse, at a federal immigration office to pursue lawful family-based immigration processing.

18. That conduct is not merely equitable evidence. It is direct behavioral evidence bearing upon flight. A person who physically presents himself to federal immigration officials at a scheduled interview, even though the interview necessarily exposes his identity and immigration history to Government scrutiny, has demonstrated conduct materially inconsistent with an assumption that he cannot be trusted to appear if released.

19. The Government's own post-order detention regulation recognizes exactly that sort of individualized inquiry. Section 241.4 applies to discretionary detention under § 1231(a)(6), and expressly provides that a person who has filed a motion to reopen remains subject to its custody-review framework unless reopening is granted. 8 C.F.R. § 241.4(b)(1). The regulation directs ICE to consider favorable United States ties, immigration history, actual history of escapes or failures to appear, and other evidence probative of compliance with release conditions. 8 C.F.R. § 241.4(f).

20. It also permits release subject to conditions, including sponsorship by a United States citizen spouse or child. 8 C.F.R. § 241.4(j).

21. Petitioner's family circumstances strongly fit that framework. He has resided in the United States since approximately 1999. He is married to a United

States citizen. He has two United States citizen children, presently approximately thirty-three and thirty-two years old, and three adult United States citizen stepchildren, presently approximately twenty-seven, twenty-five, and twenty-two years old.

22. USCIS has now approved the Form I-130 filed by Petitioner's United States citizen spouse. The approval notice expressly classifies Petitioner as the spouse of a United States citizen under INA § 201(b). I130

23. Petitioner does not contend that this approval itself grants him lawful status, invalidates the removal order, or guarantees adjustment of status. USCIS's own notice expressly cautions that an approved petition is "NOT A VISA AND MAY NOT BE USED IN PLACE OF A VISA" and that approval itself does not grant immigration status.

24. Its relevance to detention is narrower and stronger: USCIS has formally recognized the qualifying immediate-relative relationship around which Petitioner and his spouse are pursuing lawful immigration processing. Petitioner therefore possesses an additional concrete incentive to remain engaged with the adjudicatory process rather than disappear from it.

25. Petitioner also has not refused available custody review. On September 30, 2026, counsel filed a bond-redetermination request with EOIR. EOIR acknowledged receipt, categorized the filing as a "Pre-NTA Bond

Redetermination Request," and identified Petitioner's A-number, 077-622-152.

26. That filing underscores the procedural problem. If EOIR concludes that an Immigration Judge possesses bond jurisdiction, Petitioner has invoked it. If, as Respondents are likely to contend, § 1231 rather than § 1226 governs and an Immigration Judge therefore lacks ordinary bond jurisdiction, then the administrative filing demonstrates why federal habeas review is necessary rather than why it should be postponed.

27. Petitioner therefore seeks immediate release under reasonable conditions of supervision. Alternatively, he requests a prompt individualized custody hearing before a neutral decisionmaker with actual authority to order release, at which Respondents bear the burden of demonstrating by clear and convincing evidence that incarceration is presently necessary because Petitioner is a danger or a flight risk that cannot reasonably be mitigated by less restrictive conditions.

## II.

## PARTIES

28. Petitioner Carlos Alexander Solano Izaguirre, A# 077-622-152, is a native and citizen of Honduras who entered the United States without inspection in

approximately 1999 and has resided in this country for approximately twenty-seven years.

29. Petitioner is presently confined by ICE at Desert View Annex in Adelanto, California, within San Bernardino County and the Eastern Division of the Central District of California.

30. Petitioner is married to a United States citizen. USCIS has approved the Form I-130 filed by his spouse on his behalf as the spouse of a United States citizen under INA § 201(b).

31. Petitioner has two United States citizen children and three United States citizen stepchildren.

32. Respondent WARDEN, DESERT VIEW ANNEX is Petitioner's immediate physical custodian and is sued in his or her official capacity. See *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35, 443 (2004).

33. Respondent THOMAS GILES is the Field Office Director of the Los Angeles Field Office of Enforcement and Removal Operations ("ERO"), United States Immigration and Customs Enforcement. He is sued solely in his official capacity.

34. In that capacity, Respondent Giles exercises supervisory authority over ICE enforcement, detention, custody, release, supervision, transfer, and removal operations within the Los Angeles Field Office's area of responsibility,

including immigration detention operations affecting Petitioner in Southern California. Upon information and belief, he possesses authority, directly or through subordinate ICE officials, to maintain, modify, or terminate Petitioner's detention and to implement conditions of release.

35. Respondent Giles therefore has a direct operational relationship to the continuing deprivation challenged in this Petition. To the extent Respondents contend that another ERO component presently exercises operative custody authority over Petitioner, that information is peculiarly within the Government's possession and should be identified in response to this Petition.

36. Respondent DAVID J. VENTURELLA is the Acting Director of United States Immigration and Customs Enforcement, a component of DHS. He is sued solely in his official capacity.

37. As Acting Director of ICE, Respondent Venturella possesses national supervisory and policymaking authority over ICE, including ERO, the component responsible for civil immigration arrest, detention, custody review, supervision, transfer, and removal. He has ultimate supervisory responsibility within ICE for the statutory and regulatory detention regime under which Respondents continue to confine Petitioner.

38. Respondent Venturella is additionally capable, through ICE's chain of command, of implementing any declaratory, injunctive, or habeas relief entered by this Court concerning Petitioner's custody, release, conditions of supervision, or prohibition against unlawful re-detention.

39. Respondent MARKWAYNE MULLIN is the Secretary of the United States Department of Homeland Security and is sued solely in his official capacity.

40. DHS is the cabinet department charged with administering and enforcing the immigration laws relevant to Petitioner's detention. See, e.g., 6 U.S.C. §§ 202, 251; 8 U.S.C. §§ 1103, 1231. As Secretary, Respondent Mullin exercises ultimate supervisory authority over ICE and the DHS officers and components responsible for Petitioner's civil immigration custody.

41. Respondent Mullin is named because Petitioner's claims challenge the continuing exercise of federal immigration detention authority and seek prospective relief capable of binding the Department and its subordinate components. He possesses supervisory authority sufficient to ensure compliance with an order directing release, imposing conditions upon any future re-detention, or otherwise regulating the exercise of DHS custody authority over Petitioner.

42. Respondent TODD BLANCHE is the Attorney General of the United States and is sued solely in his official capacity.

43. The Attorney General exercises authority over the Executive Office for Immigration Review ("EOIR"), including the Immigration Courts and Board of Immigration Appeals. See 8 U.S.C. § 1103(g); 8 C.F.R. § 1003.0 et seq. That authority is relevant here because Petitioner's Motion to Reopen and Rescind his February 3, 2000 in absentia removal order remains pending before the Harlingen Immigration Court, and Petitioner has separately attempted to invoke administrative custody review.

44. Petitioner's July 30, 2026 Motion to Reopen is based upon lack of notice and therefore carries the statutory consequence prescribed by 8 U.S.C. § 1229a(b)(5)(C): execution of the in absentia removal order is stayed while the Immigration Judge adjudicates that motion. The Attorney General is consequently named to the extent necessary to ensure complete prospective relief concerning the interaction between the pending EOIR proceedings, the statutory stay of removal, and Petitioner's continuing detention.

45. Petitioner does not seek through this action to compel the Attorney General or EOIR to grant the Motion to Reopen, adjudicate the merits of the notice claim, or otherwise interfere with the substance of the pending immigration

proceedings. The Attorney General is named solely in his official capacity to the extent necessary to effectuate complete habeas and equitable relief and to prevent conflicting exercises of federal custody and adjudicatory authority.

46. Respondent UNITED STATES DEPARTMENT OF HOMELAND SECURITY is the federal department under whose statutory authority Petitioner is presently detained. DHS is responsible, through ICE and its subordinate officers, for the continued exercise of civil immigration custody challenged in this Petition.

47. Respondent UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT is the DHS component responsible for Petitioner's present detention. ICE, principally through ERO, possesses operational authority over Petitioner's custody, placement, transfer, release, supervision, and any future efforts to execute the February 3, 2000 removal order if and when that order again becomes executable.

48. Petitioner sues all individual federal Respondents solely in their official capacities. No damages are sought against any individual Respondent. Petitioner seeks habeas, declaratory, and prospective injunctive relief directed toward the continuing legality of his physical confinement and the procedures governing any future deprivation of liberty.

49. Petitioner presently identifies DOES 1 through 10 as federal officers, employees, agents, contractors, or custodial officials whose identities are not yet known but who participated in, authorized, implemented, or presently maintain Petitioner's detention, transfer, custody determination, or continued confinement.

50. Petitioner will seek leave to substitute the true names and capacities of the Doe Respondents if their identities become known and their participation proves material to the relief requested.

51. Respondent EDDY WANG is the Special Agent in Charge of Homeland Security Investigations ("HSI"), Los Angeles Field Office, an investigative component of ICE, and is sued solely in his official capacity. Upon information and belief, HSI personnel operating within his chain of command participated in or exercised supervisory authority over the enforcement action through which Petitioner was taken into federal immigration custody. Respondent Wang is named to the extent necessary to obtain complete relief concerning the arrest, preservation and production of the enforcement record, and any prospective prohibition upon unlawful re-detention.

52. Respondent RODNEY S. SCOTT is the Commissioner of United States Customs and Border Protection ("CBP"), a component of the United States Department of Homeland Security, and is sued solely in his official capacity.

53. The remaining federal Respondents administer the statutory and regulatory system pursuant to which Petitioner remains detained and are sued in their official capacities to the extent necessary to provide complete habeas and equitable relief.

## III.

## JURISDICTION AND VENUE

54. This Court possesses jurisdiction under 28 U.S.C. § 2241(c)(3) because Petitioner is presently "in custody in violation of the Constitution or laws or treaties of the United States."

55. Habeas jurisdiction extends to challenges to the statutory and constitutional legality of immigration detention. *Zadvydas*, 533 U.S. at 687–88; *Demore v. Kim*, 538 U.S. 510, 516–17 (2003).

56. Petitioner's claims fall within the traditional core of habeas because he seeks release from present physical custody, or constitutionally sufficient process capable of producing release, rather than damages for past conduct. See *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).

57. The Court also possesses federal-question jurisdiction under 28 U.S.C. § 1331 because Petitioner's claims arise under the Fifth Amendment, 8 U.S.C. § 1231(a)(6), 8 U.S.C. § 1229a(b)(5)(C), and 8 C.F.R. §§ 241.4 and 1003.23(b)(4)(ii).

58. Petitioner does not seek judicial review of the February 3, 2000 removal order.

59. He does not ask this Court to determine whether the Harlingen Immigration Court provided legally sufficient notice in 2000.

60. He does not ask the Court to grant the pending Motion to Reopen or to adjudicate his ultimate immigration eligibility. Those issues remain before EOIR.

61. Petitioner's reliance on the Motion to Reopen is collateral: because it is based on lack of notice, its filing automatically stays removal, thereby materially affecting whether present physical detention remains reasonably related to execution of the final order.

62. Section 1252 therefore does not channel this independent physical-custody challenge into a petition for review of a final removal order. See *Zadvydas*, 533 U.S. at 687–88.

63. Venue is proper because Petitioner is physically confined within this District at Desert View Annex and his immediate custodian is located here.

## IV.

## THE EXPEDITED PROCEDURES OF 28 U.S.C. § 2243 ARE PARTICULARLY APPROPRIATE

64. Section 2243 directs a court entertaining a habeas application to award the writ or order the respondent to show cause unless it appears from the petition that the applicant is not entitled to relief.

65. The expedited character of § 2243 has particular force where, as here, the alleged constitutional injury is continuing physical incarceration.

66. Much of the relevant record is undisputed and readily verifiable. EOIR confirms the February 3, 2000 in absentia removal order. EOIR likewise confirms receipt of the Motion to Reopen on July 30, 2026 and presently identifies no future hearing.

67. USCIS's approval notice confirms that the immediate-relative petition filed by Petitioner's citizen spouse has been approved.

68. EOIR's September 30 electronic filing confirmation establishes that Petitioner affirmatively requested custody redetermination rather than deliberately bypassing available administrative procedures.

69. The remaining information is almost entirely in Respondents' possession: the Form I-205 or other warrant used to take Petitioner into custody; his I-213; the precise detention-authority determination; any post-order custody-review notice or decision under 8 C.F.R. § 241.4; any assessment of danger or flight

risk; any travel-document request; communications with Honduran authorities; and any evidence establishing the present anticipated timeline for removal should the statutory stay terminate. Those materials should be capable of prompt production.

70. Expedited review is therefore warranted while Petitioner remains incarcerated under a discretionary detention provision and while no removal may presently be executed.

## V.

## FACTUAL BACKGROUND

### A. *Petitioner Has Lived in the United States for Approximately Twenty-Seven Years and Built His Family Life Here*

71. Petitioner entered the United States without inspection in approximately 1999.

72. He thereafter resided principally in Southern California and established his adult life here.

73. Petitioner is married to a United States citizen.

74. He has two United States citizen children, now approximately thirty-three and thirty-two years old, and three United States citizen stepchildren, presently approximately twenty-seven, twenty-five, and twenty-two.

75. Those relationships are not newly created release plans assembled after detention. They represent decades of accumulated family life within the United States.

B. *An Immigration Judge in Harlingen Entered an In Absentia Removal Order in 2000*

76. On February 3, 2000, an Immigration Judge in Harlingen, Texas entered an order of removal against Petitioner in absentia. EOIR's present case-information record confirms that date and the Harlingen Immigration Court as the relevant tribunal. Automated Case Information Carl…

77. Petitioner contends that he lacked legally sufficient notice of that proceeding and was residing in Los Angeles.

78. The merits of that notice claim are not before this Court.

79. Petitioner has submitted the notice issue to the Harlingen Immigration Court through the congressionally prescribed remedy of a Motion to Reopen and Rescind.

C. *Petitioner Voluntarily Appeared for His Government-Scheduled I-130 Interview*

80. Petitioner's United States citizen spouse filed a Form I-130 on his behalf. USCIS thereafter scheduled the couple for an interview concerning that petition.

81. On July 23, 2026, Petitioner voluntarily appeared at USCIS with his spouse for that interview.

82. He did so despite the obvious fact that appearing before USCIS would place his identity and immigration history directly before federal immigration officials.

83. Petitioner did not evade the appointment. He did not send his spouse alone. He did not disappear after commencing affirmative immigration processing. He physically presented himself to the United States Government. ICE took Petitioner into custody at that appointment.

84. The circumstances of detention therefore provide concrete evidence concerning likely future appearance. The Government did not locate Petitioner because he was hiding. It located him because he appeared where the Government told him to appear.

D. *On July 30, Petitioner Filed a Lack-of-Notice Motion That Automatically Stayed Removal*

85. One week after being detained, Petitioner filed his Motion to Reopen and Rescind with the Harlingen Immigration Court.

86. EOIR confirms receipt on July 30, 2026.

87. The motion invokes the lack-of-notice mechanism governing in absentia orders. Section 1229a(b)(5)(C) expressly permits such a motion "at any time" where the required notice was not received.

88. Congress further directed that filing such a motion stays removal pending disposition by the Immigration Judge.

89. The implementing regulation likewise provides that “[t]he filing of a motion to reopen under this paragraph shall stay the removal of the alien pending decision on the motion.” 8 C.F.R. § 1003.23(b)(4)(ii).

90. Thus, beginning July 30, Respondents no longer possessed legal authority to execute Petitioner's removal while the motion remains pending.

91. The underlying removal order remains final unless and until reopened. But it cannot presently be executed.

92. EOIR presently reports no future hearing concerning Petitioner's case.

E. *USCIS Approved the Spousal I-130*

93. USCIS subsequently approved the Form I-130 filed by Petitioner's United States citizen spouse and classified Petitioner as the spouse of a United States citizen under INA § 201(b). I130

94. Petitioner expressly acknowledges the legal limitation of that approval.

95. USCIS's notice states that the approved petition is not a visa and cannot itself be used in place of a visa, and that approval does not itself confer immigration status. I130

96. Petitioner accordingly does not rely on the I-130 approval as an independent entitlement to release or permanent residence.

97. Rather, the approval is relevant because it confirms the bona fide statutory family relationship underlying the immigration process in which Petitioner voluntarily participated and gives him a concrete reason to continue pursuing lawful administrative relief.

F. *Petitioner Has Sought Custody Review*

98. Counsel has not ignored potential administrative custody remedies.

99. On September 30, 2026, counsel electronically filed a request for bond redetermination.

100. EOIR confirmed receipt of that filing and classified it under the subcategory "Pre-NTA Bond Redetermination Request."

101. EOIR stated that it was evaluating the documents for inclusion in the electronic Record of Proceeding.

102. No individualized custody hearing has occurred as of the filing of this Petition.

## VI.

## PETITIONER'S CURRENT DETENTION IS DISCRETIONARY POST-REMOVAL-PERIOD DETENTION UNDER § 1231(a)(6)

103. The statutory source of detention matters because § 1231 distinguishes between mandatory detention during the ninety-day removal period and discretionary detention after that period expires.

104. Petitioner's removal order became final decades ago. The original ninety-day removal period consequently expired decades before ICE's July 2026 detention.

105. Petitioner's present custody therefore cannot be justified by § 1231(a)(2)'s mandatory ninety-day detention provision.

106. *L.M.P.* addressed the same argument in materially similar circumstances. The Government there argued that the automatic administrative stay caused by a lack-of-notice Motion to Reopen somehow postponed or restarted the statutory removal period. Judge Thurston rejected that argument and treated the detention as post-removal-period custody under § 1231(a)(6).

107. That aspect of *L.M.P.* favors Petitioner here.

108. The Government likewise cannot invoke § 1231(a)(1)(C)'s extension for obstruction absent evidence that Petitioner “acts to prevent” removal within the meaning of that provision. Filing a statutorily authorized lack-of-notice Motion to Reopen, one Congress expressly permits “at any time” and expressly makes removal-staying, is not itself unlawful obstruction.

109. Accordingly, the present detention is discretionary under § 1231(a)(6).

110. That provision states that certain persons “may be detained” beyond the removal period. It does not command detention in every case.

111. The statutory question is therefore not whether ICE had some abstract authority to take Petitioner into custody. It is whether continuing incarceration remains authorized and constitutionally permissible under the circumstances that now exist.

## VII.
## THE GOVERNMENT'S OWN REGULATION REQUIRES AN INDIVIDUALIZED POST-ORDER CUSTODY DETERMINATION

112. Section 241.4 is the regulation governing continued detention or release under § 1231(a)(6).

113. Significantly, the regulation expressly addresses motions to reopen. Section 241.4(b)(1) provides that a person who has filed a motion to reopen for relief from removal "shall remain subject to the provisions of this section unless the motion to reopen is granted."

114. The pending Motion to Reopen therefore does not place Petitioner outside the post-order custody-review system. It places him squarely within it.

115. Section 241.4(d) requires that a custody decision be provided to the detainee and that a decision retaining custody "briefly set forth the reasons for the continued detention."

116. The regulation further provides substantive criteria for release. The decisionmaker must consider whether immediate removal is practicable;

whether the detainee is violent or presents a community threat; whether he is likely to comply with release conditions; and whether he presents a "significant flight risk." 8 C.F.R. § 241.4(e).

117. Section 241.4(f) then identifies the specific factors relevant to that inquiry.

118. Those factors include criminal conduct, favorable ties to the United States, immigration history, and—critically—the likelihood of flight as demonstrated by such individualized conduct as prior escapes, failures to appear, absence from sponsorship programs, or other defaults.

119. The regulation therefore does not contemplate continued incarceration merely because a final order exists.

120. It requires an individualized assessment of actual present risk. That framework makes Petitioner's July 23 conduct especially significant. He did the opposite of failing to appear. He appeared.

121. He did so at a federal immigration office for the specific purpose of pursuing immigration processing through his United States citizen spouse.

122. His extensive United States citizen family ties are likewise expressly relevant under § 241.4(f)(5).

123. And § 241.4(j) specifically authorizes release conditioned upon sponsorship by a United States citizen spouse, child, sibling, or other close relative.

124. Thus, both the facts on which Petitioner relies and the conditions he proposes are already contemplated by the Government's own post-order custody regulations.

125. Upon information presently available, Respondents have not provided Petitioner a reasoned individualized written custody determination under § 241.4 addressing the changed legal posture created on July 30.

126. If Respondents contend otherwise, they should be required to produce that determination and the underlying record.

## VIII.
## JULY 30 MATERIALLY CHANGED THE RELATIONSHIP BETWEEN CUSTODY AND REMOVAL

127. The constitutional analysis must distinguish between the circumstances existing on July 23 and those existing after July 30.

128. Before July 30, Respondents possessed an administratively final order that, on its face, was executable.

129. After July 30, Congress prohibited execution while the Immigration Judge considers the lack-of-notice challenge.

130. That intervening legal development matters under *Zadvydas* because § 1231(a)(6) is constitutionally tethered to the regulatory purpose of effectuating removal.

131. Petitioner does not contend that every administrative stay immediately compels release.

132. The narrower contention is that when execution of an extremely old order becomes legally stayed for an indeterminate period, continued detention must be reassessed against the actual regulatory purposes that remain.

133. Here, there is presently no scheduled hearing on the Motion to Reopen.

134. There is no identified decision date. Respondents have not shown that removal will become executable within any defined period.

135. Nor have they provided a neutral custody determination showing that incarceration is separately necessary to address danger or actual flight.

136. Detention cannot remain justified indefinitely by reference to a removal that the Government is legally forbidden to execute while simultaneously dispensing with individualized custody analysis.

## IX.

## ZADVYDAS'S SIX-MONTH PRESUMPTION IS NOT A CATEGORICAL SAFE HARBOR

137. Respondents are likely to argue that Petitioner has not yet been detained for six months.

138. That circumstance is relevant. It is not dispositive. *Zadvydas* identified six months as a "presumptively reasonable" period designed to aid uniform administration. 533 U.S. at 701.

139. It did not state that every detention under six months is conclusively lawful regardless of whether confinement remains connected to removal.

140. *Clark v. Martinez* made the distinction explicit. The Court explained that *Zadvydas* did not hold that § 1231(a)(6) affirmatively authorizes detention until constitutional limits are approached; instead, the provision was construed to authorize detention only for a period consistent with accomplishing removal. 543 U.S. at 384. Justia Law

141. *Trinh v. Homan* likewise rejected the argument that *Zadvydas* categorically prohibits challenges before six months. 466 F. Supp. 3d at 1092–93.

142. More recently, the Eastern District has repeatedly applied that understanding. In *Jingqi X.*, the court concluded that approximately three and one-half months of detention was no longer presumptively reasonable

where there was no evidence of danger, flight risk, constitutionally meaningful process, or reasonably foreseeable removal.

143. And in *Martinez-Ayerdis*, the court rejected the Government's specific argument that a four-month detention necessarily remained lawful merely because six months had not elapsed.

144. The court reasoned that two decades of Government inaction on the old removal order, absence of individualized danger or flight evidence, absence of meaningful neutral process, and failure to establish reasonably foreseeable removal rendered continued detention unreasonable under § 1231(a)(6).

145. Judge Drozd adopted those findings and ordered immediate release.

146. Petitioner's detention must therefore be examined in context rather than by counting forward mechanically to a six-month anniversary.

## X.
## L.M.P. IDENTIFIES THE STATUTORY FRAMEWORK BUT DOES NOT CONTROL THE PRESENT CONSTITUTIONAL RESULT

147. Petitioner addresses *L.M.P. v. Chestnut* directly because it is the most factually analogous adverse authority.

148. Like Petitioner, the detainee in *L.M.P.* was subject to a longstanding in absentia removal order and had filed a lack-of-notice Motion to Reopen whose filing automatically stayed removal.

149. Judge Thurston rejected the proposition that the pending motion moved the petitioner out of § 1231(a)(6). Petitioner does not challenge that aspect of the decision.

150. The court nevertheless emphasized that the petitioner had been detained for only approximately twenty days and rested its denial upon the conclusion that this exceptionally brief custody remained comfortably within the *Zadvydas* presumption.

151. Mr. Solano is in a materially different posture. His detention has continued since July 23. The automatic stay has been in effect since July 30. More than two months of confinement have therefore accumulated while the Government has been unable to execute the order. EOIR presently lists no future hearing on the motion.

152. Petitioner has affirmatively requested custody review.

153. USCIS has approved his citizen-spouse I-130. Most importantly, the Government obtained custody because Petitioner voluntarily appeared at USCIS rather than because it located him in flight or hiding.

154. Moreover, *L.M.P.* predated *Martinez-Ayerdis*. The latter confirms that *L.M.P.* cannot be converted into a categorical rule insulating all sub-six-month § 1231(a)(6) detention from habeas review.

155. *L.M.P.* therefore establishes that § 1231(a)(6) supplies the statutory framework. *Martinez-Ayerdis*, *Jingqi X.*, *Trinh*, and *Zadvydas* establish that the continued exercise of that authority remains subject to individualized reasonableness.

## XI.
## MARTINEZ-AYERDIS PROVIDES THE STRONGEST REMEDIAL ANALOGY

156. *Martinez-Ayerdis* is not factually identical, and Petitioner does not suggest otherwise. The petitioner's motion to reopen there had already been denied.

157. The significance of the case lies instead in its analysis of § 1231(a)(6) and *Zadvydas*.

158. The petitioner was subject to an approximately twenty-year-old in absentia order, had been detained for only four months, and had no criminal history. Respondents did not establish danger, flight risk, or reasonably foreseeable removal.

159. The court expressly rejected the proposition that detention remained presumptively lawful simply because the six-month benchmark had not expired.

160. It held that the petitioner's confinement was "unmoored from the potential justifications for immigration detention," emphasized the absence

of meaningful neutral custody process, and concluded that *Zadvydas* does not give the Government "carte blanche" to detain a noncitizen whenever and for whatever period the Government chooses before effectuating removal.

161. The court ordered immediate release.

162. The principle carries substantial force here. Respondents allowed Petitioner's 2000 order to remain unexecuted for approximately twenty-six years. ICE then detained him not because he absconded, but because he appeared at USCIS. Seven days later, a congressionally mandated stay made removal temporarily unexecutable. Yet incarceration continues without a neutral determination establishing that his individual conduct makes release unsafe or impracticable.

163. Those circumstances present at least as strong a case for immediate judicial examination of whether § 1231(a)(6)'s discretionary authority remains reasonably exercised.

## XII.
## PETITIONER'S VOLUNTARY APPEARANCE AT USCIS IS DIRECT EVIDENCE AGAINST FLIGHT

164. The manner in which ICE obtained custody deserves independent analytical weight. Flight risk is inherently predictive.

165. The strongest evidence of how a person will respond to future Government obligations is often how that person actually responded to Government obligations in the past.

166. Petitioner was instructed to appear at USCIS. He appeared. He brought his United States citizen spouse and participated in the family-based immigration process rather than abandoning it.

167. The Government therefore possesses actual evidence of compliance under circumstances in which immigration scrutiny was unavoidable.

168. Section 241.4(f)(7) makes precisely this kind of behavioral history relevant. It identifies escapes, failures to appear, absence from sponsorship programs, and other defaults as indicators bearing upon significant flight risk.

169. Petitioner presents the inverse record: appearance rather than default.

170. Central District cases involving arrests at scheduled immigration appointments further illustrate why that conduct matters. In *Jianxian Yu v. Giles*, the petitioner repeatedly complied with immigration requirements and appeared for a scheduled USCIS asylum interview, where ICE arrested him. The court treated that compliance as materially relevant to the liberty and flight analysis and ordered immediate release.

171. *Yu* arose under § 1226(a), not § 1231(a)(6), and Petitioner does not import its statutory holding into this case.

172. Its factual reasoning remains persuasive: attendance at a Government-scheduled immigration interview is evidence of compliance and appearance.

173. *Gomez Fuentes v. Mullin* likewise involved detention at a scheduled USCIS asylum interview and found the resulting custody process constitutionally inadequate, ultimately ordering a new custody hearing.

174. Again, Petitioner's reliance is limited. These cases do not determine the § 1231 question. They confirm why the Government cannot rationally treat attendance at an immigration appointment as irrelevant to the individualized custody analysis.

## XIII.
## THE APPROVED I-130 STRENGTHENS THE APPEARANCE ANALYSIS WITHOUT CONFERRING STATUS

175. Petitioner's approved I-130 should likewise be used carefully.

176. The approval establishes that USCIS has recognized the qualifying relationship between Petitioner and his United States citizen spouse.

177. It does not establish that Petitioner is presently admissible. It does not itself overcome the in absentia order. It does not guarantee that reopening will be granted. It does not independently authorize adjustment of status.

178. USCIS's own approval notice makes those limitations clear. I130 But those limitations do not render the approval irrelevant to detention.

179. A person with an approved immediate-relative petition and a pending motion seeking reopening of an order he claims never to have received possesses a concrete incentive to remain connected to counsel, family, USCIS, and EOIR.

180. That incentive must be weighed against actual evidence of nonappearance before Respondents can characterize imprisonment as necessary to prevent flight.

## XIV.
## PROCEDURAL DUE PROCESS REQUIRES MEANINGFUL INDIVIDUALIZED REVIEW OF THE CONTINUING NEED FOR DETENTION

181. The Fifth Amendment protects every "person" within the United States against deprivation of liberty without due process. *Zadvydas*, 533 U.S. at 693.

182. Freedom from physical imprisonment lies "at the heart" of that protected liberty. *Id.* at 690.

183. Where detention is discretionary rather than mandatory, and where changed circumstances materially weaken the relationship between confinement and immediate removal, due process requires meaningful

procedures capable of testing whether continued incarceration remains necessary.

184. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), requires consideration of the private interest affected, the risk of erroneous deprivation and value of additional safeguards, and the Government's interests.

A. *The Private Interest Is Exceptionally Substantial*

185. Petitioner's private interest is freedom from physical civil incarceration.

186. That interest is intensified by approximately twenty-seven years of residence outside immigration detention and by his extensive United States citizen family relationships.

187. Detention separates him from his citizen spouse, citizen children, and citizen stepchildren and prevents him from participating personally in the immigration processes through which he seeks to resolve the old in absentia order.

188. The fact that Petitioner's immigration status remains unresolved does not diminish the constitutional character of bodily liberty. *Zadvydas*, 533 U.S. at 693.

B. *The Risk of Erroneous Detention Is Substantial*

189. The risk of error is substantial because continued custody presently rests on a twenty-six-year-old removal order whose execution is stayed, while no neutral adjudicator has meaningfully tested whether incarceration is currently necessary.

190. Petitioner's actual behavior points away from flight: he voluntarily reported to USCIS for the interview at which ICE detained him.

191. His citizen spouse, five citizen children and stepchildren, approved I-130, pending Motion to Reopen, and active representation provide additional reasons for continued participation in immigration proceedings.

192. An individualized proceeding could test those considerations against whatever evidence Respondents possess.

193. It could also evaluate less restrictive means already contemplated by § 241.4, including release to a citizen spouse or child, reporting requirements, electronic monitoring, residence restrictions, document surrender, or other supervision.

194. Continued incarceration without such review creates a material risk that discretionary § 1231(a)(6) authority will function as categorical detention merely because a decades-old final order exists.

C. *Additional Process Would Impose Little Burden While Serving the Government's Legitimate Interests*

195. The Government unquestionably possesses legitimate interests in ensuring Petitioner's availability and executing any removal order that ultimately becomes enforceable.

196. But the relevant constitutional question is not whether those interests exist in the abstract.

197. It is whether they require physical imprisonment now, while removal is stayed.

198. The Government already maintains mechanisms for post-order custody review under § 241.4.

199. That regulation already requires evaluation of danger, flight, family ties, and compliance and expressly permits conditional release.

200. Requiring a meaningful individualized custody determination therefore creates no unfamiliar administrative apparatus.

201. All three *Mathews* factors favor meaningful custody review.

## XV.
## RESPONDENTS CANNOT SUBSTITUTE THE EXISTENCE OF A FINAL ORDER FOR AN INDIVIDUALIZED FLIGHT-RISK DETERMINATION

202. The existence of a final removal order establishes removability for purposes of § 1231 unless and until reopened. It does not logically establish

that Petitioner is a significant flight risk. The distinction is embedded in § 241.4 itself.

203. If every person with a final order necessarily posed an unmanageable risk of flight, there would be no reason for the regulation separately to require examination of escapes, failures to appear, family ties, compliance, and available conditions of release.

204. Petitioner has an old in absentia order, but the current Motion to Reopen specifically alleges that the nonappearance resulted from lack of notice.

205. Until that question is adjudicated, the mere existence of the 2000 in absentia order cannot rationally be treated as equivalent to a demonstrated history of deliberately absconding from known proceedings.

206. That distinction is especially important because Petitioner's contemporary conduct points in the opposite direction: he appeared for the July 23 USCIS interview.

## XVI.
## JOHNSON v. GUZMAN CHAVEZ AND JOHNSON v. ARTEAGA-MARTINEZ DO NOT DEFEAT THE PETITION

207. Petitioner anticipates that Respondents may rely upon *Johnson v. Guzman Chavez*, 594 U.S. 523 (2021), and *Johnson v. Arteaga-Martinez*, 596 U.S. 573 (2022).

208. Neither forecloses relief.

209. *Guzman Chavez* addresses which detention statute governs persons subject to certain final orders while pursuing withholding-only proceedings. Its distinction between §§ 1226 and 1231 supports Petitioner's concession that § 1231(a)(6) provides the relevant statutory framework here.

210. Petitioner does not contend that a pending Motion to Reopen automatically transfers him into § 1226(a).

211. *Arteaga-Martinez* held that § 1231(a)(6) itself cannot be interpreted to impose a statutory requirement for Government-burden bond hearings after six months.

212. Petitioner does not advance that statutory construction.

213. The Supreme Court expressly declined in *Arteaga-Martinez* to resolve the petitioner's constitutional due-process claim, leaving constitutional challenges for the lower courts. 596 U.S. at 583.

214. Thus, neither case forecloses Petitioner's separate contention that his particular continuing detention, under the circumstances now existing, violates *Zadvydas* and the Fifth Amendment and requires either release or constitutionally adequate individualized review.

## XVII.
## ADMINISTRATIVE EXHAUSTION DOES NOT BAR HABEAS REVIEW

215. Section 2241 does not impose a statutory administrative-exhaustion requirement on this detention claim. Exhaustion is prudential. *Laing v. Ashcroft*, 370 F.3d 994, 997–1001 (9th Cir. 2004); *Puga v. Chertoff*, 488 F.3d 812, 815–16 (9th Cir. 2007).

216. Petitioner has, in any event, attempted to invoke administrative custody review.

217. EOIR acknowledged receipt of his September 30 request. There is therefore no deliberate bypass.

### A. *Agency Expertise Is Not Necessary To Resolve the Principal Legal Questions*

218. The principal issues are whether continued detention under § 1231(a)(6) remains reasonably related to removal while removal is statutorily stayed; whether Respondents have complied with the applicable post-order custody framework; and whether continued imprisonment without meaningful individualized process violates due process.

219. Those are statutory, regulatory, and constitutional questions within the traditional competence of a federal habeas court.

B. *Petitioner Has Invoked Rather Than Evaded Administrative Procedures*

220. Petitioner filed the Motion to Reopen in the tribunal having jurisdiction over the old in absentia order. He has also submitted a custody request. If an Immigration Judge accepts bond jurisdiction, Petitioner has placed the issue before the agency.

221. If the Immigration Judge concludes that § 1231(a)(6) deprives EOIR of ordinary bond jurisdiction, administrative exhaustion cannot require Petitioner to pursue a remedy the agency says does not exist.

C. *The BIA Cannot Resolve the Constitutional Claim*

222. The BIA lacks authority to invalidate the statutes or regulations it administers on constitutional grounds. See *Matter of R-A-V-P-*, 27 I. & N. Dec. 803, 804 n.2 (BIA 2020); *Matter of G-K-*, 26 I. & N. Dec. 88, 96–97 (BIA 2013).

223. Nor can administrative review restore physical liberty already lost during an unconstitutional detention.

224. *Puga* and *Laing* therefore do not require dismissal or delay.

## CLAIMS FOR RELIEF

## COUNT ONE

## CONTINUED DETENTION UNDER § 1231(a)(6) HAS BECOME UNREASONABLE AND IS NO LONGER SUFFICIENTLY TETHERED TO EFFECTUATING REMOVAL

225. Petitioner realleges the preceding paragraphs.

226. The mandatory ninety-day removal period expired decades ago. Current detention is therefore discretionary under § 1231(a)(6).

227. Under *Zadvydas*, that authority extends only for a period reasonably related to accomplishing removal.

228. Beginning July 30, federal law automatically stayed execution of Petitioner's removal order. EOIR identifies no future hearing or adjudication date for the pending Motion to Reopen.

229. Respondents have not established that removal will become executable within any defined or reasonably predictable period.

230. Respondents have not shown that Petitioner presently poses danger.

231. Nor have they supplied a constitutionally adequate individualized determination that Petitioner presents a significant flight risk requiring incarceration rather than supervision.

232. The Government obtained custody because Petitioner voluntarily appeared at USCIS, conduct inconsistent with an inference of present evasion.

233. Under the totality of these circumstances, continued detention has become unreasonable and insufficiently related to the purpose for which § 1231(a)(6) authorizes custody.

**COUNT TWO**

**RESPONDENTS HAVE FAILED TO PROVIDE THE MEANINGFUL INDIVIDUALIZED CUSTODY REVIEW CONTEMPLATED BY 8 C.F.R. § 241.4 AND THE FIFTH AMENDMENT**

234. Petitioner realleges the preceding paragraphs.

235. Section 241.4 applies to discretionary detention under § 1231(a)(6), including to a person with a pending Motion to Reopen unless reopening is granted.

236. The regulation contemplates individualized consideration of United States family ties, immigration history, actual failures to appear or escape, danger, significant flight risk, and the availability of release conditions.

237. Upon information presently available, no neutral or meaningful custody determination has assessed those factors following the July 30 statutory stay.

238. Petitioner's United States citizen spouse, five citizen children and stepchildren, approved I-130, voluntary attendance at the USCIS interview, and pending lack-of-notice motion are directly relevant to that regulatory inquiry.

239. Continued detention without meaningful individualized review violates the Due Process Clause and, to the extent Respondents have failed to conduct or document the review required by their own regulations, is inconsistent with governing federal law.

## COUNT THREE

## FIFTH AMENDMENT PROCEDURAL DUE PROCESS

240. Petitioner realleges the preceding paragraphs.

241. Petitioner has a fundamental liberty interest in freedom from physical civil incarceration.

242. The circumstances justifying custody materially changed on July 30 when Congress automatically stayed removal.

243. Respondents nevertheless continued Petitioner's confinement without a prompt neutral determination addressing whether detention remained necessary under the changed circumstances.

244. Under *Mathews*, Petitioner's substantial private interest, the serious risk of erroneous detention, the obvious value of an individualized custody

determination, and the comparatively modest Government burden of supplying meaningful review establish a procedural due-process violation.

## COUNT FOUR

## FIFTH AMENDMENT SUBSTANTIVE DUE PROCESS — CONTINUED DETENTION IS EXCESSIVE IN RELATION TO ITS PRESENT REGULATORY PURPOSE

245. Petitioner realleges the preceding paragraphs.

246. Immigration detention is civil and regulatory, not punitive. *Zadvydas*, 533 U.S. at 690; *United States v. Salerno*, 481 U.S. 739, 747 (1987).

247. The central regulatory purpose of post-order detention is to effectuate removal and ensure the person's availability for that process.

248. Removal is presently stayed by federal law. Petitioner's availability can be protected through substantial less restrictive measures contemplated by § 241.4 itself.

249. His voluntary USCIS appearance supplies concrete evidence of compliance.

250. Continued incarceration without an individualized finding that less restrictive measures are insufficient has become excessive in relation to the regulatory purpose asserted.

## IMMEDIATE RELEASE IS THE APPROPRIATE PRIMARY HABEAS REMEDY

251. Section 2243 authorizes the Court to dispose of a habeas matter "as law and justice require."

252. Where physical detention is no longer statutorily or constitutionally justified, release is the traditional habeas remedy.

253. *Martinez-Ayerdis* supplies particularly relevant persuasive authority. Faced with discretionary § 1231(a)(6) detention shorter than six months, a decades-old in absentia order, no individualized showing of danger or flight, no meaningful custody process, and no showing of reasonably foreseeable removal, the Eastern District ordered immediate release.

254. Immediate release here would not disturb the Harlingen Immigration Court's jurisdiction. It would not rescind the February 2000 order. It would not grant the pending Motion to Reopen. It would not confer immigration status. It would not transform the approved I-130 into a visa or adjustment grant.

255. It would simply permit Petitioner to remain available to pursue those processes under reasonable conditions while Respondents remain legally unable to execute his removal.

256. Reasonable conditions could include residence with his United States citizen spouse, regular ICE reporting, electronic monitoring if genuinely

necessary, geographic restrictions, document surrender, or other conditions permitted under 8 C.F.R. §§ 241.4 and 241.5.

257. Immediate release is therefore both effective and narrowly tailored.

**ALTERNATIVE RELIEF — A PROMPT CONSTITUTIONALLY ADEQUATE CUSTODY HEARING**

258. If the Court concludes that immediate release is premature, it should not deny the Petition.

259. At minimum, Respondents should be ordered to provide a constitutionally meaningful individualized custody proceeding within no more than seven days.

260. The proceeding should occur before a neutral decisionmaker possessing actual authority to order release.

261. As a result of the hearing would be fashioned as a remedy for Petitioner's as-applied constitutional challenge, not inferred as a categorical statutory entitlement under § 1231(a)(6), the Court may prescribe procedures necessary to ensure meaningful review without conflicting with *Arteaga-Martinez*.

262. Respondents should bear the burden by clear and convincing evidence of establishing that Petitioner's present incarceration is necessary because he

poses either a danger to the community or a genuine risk of nonappearance that cannot reasonably be mitigated through release conditions.

263. The decisionmaker should meaningfully consider Petitioner's approximately twenty-seven years in the United States; his United States citizen spouse; his two United States citizen children; his three United States citizen stepchildren; the approved spousal I-130; his voluntary appearance at the July 23 USCIS interview; the pending Motion to Reopen; the statutory stay; and the absence or presence of any actual history of escape or knowing failure to appear.

264. The decisionmaker should separately consider less restrictive alternatives, including release to Petitioner's spouse, ICE reporting, electronic monitoring, document surrender, residence requirements, reasonable geographic restrictions, or other conditions authorized by regulation.

265. Any decision continuing detention should be written and should identify the evidence demonstrating why continued physical incarceration is necessary.

266. If Respondents cannot provide such a hearing within the period ordered, Petitioner should be immediately released.

## PRESERVATION OF THE COURT'S JURISDICTION

267. Petitioner is presently detained within the Central District of California.

268. Transfer outside the District would complicate access to counsel, impede this Court's ability to provide effective habeas relief, and potentially create disputes concerning the identity of the immediate custodian.

269. Petitioner therefore requests an order prohibiting transfer outside this District during the pendency of the Petition absent advance notice to counsel and the Court or further judicial authorization.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court:

A. Exercise jurisdiction pursuant to 28 U.S.C. § 2241;

B. Issue an expedited Order to Show Cause pursuant to 28 U.S.C. § 2243;

C. Require Respondents to identify the precise statutory authority presently relied upon for Petitioner's continuing detention;

D. Declare that the mandatory ninety-day removal period expired long ago and that any present detention is discretionary detention under 8 U.S.C. § 1231(a)(6);

E. Recognize that the July 30, 2026 filing of Petitioner's lack-of-notice Motion to Reopen automatically stays execution of the February 3, 2000 in absentia removal order pending disposition by the Immigration Judge;

F. Require Respondents to produce any Form I-205 or other removal/arrest warrant; Petitioner's Form I-213; any Form I-286 or custody determination; every notice, worksheet, recommendation, or decision issued under 8 C.F.R. § 241.4; any Post-Order Custody Review materials; all danger and flight-risk assessments; travel-document requests and responses; and all evidence concerning the present reasonably foreseeable execution of removal;

G. Determine that Petitioner's continued detention under § 1231(a)(6), in the circumstances presently existing, is no longer reasonably related to effectuating removal and violates the Constitution and laws of the United States;

H. Determine that continued confinement without meaningful individualized custody review violates the Fifth Amendment;

I. Issue a writ of habeas corpus directing Respondents to immediately release Carlos Alexander Solano Izaguirre under reasonable conditions of supervision;

J. Enjoin Respondents from re-detaining Petitioner on substantially the same factual record absent materially changed circumstances and constitutionally adequate process;

K. Alternatively, require Respondents within no more than seven days to provide a constitutionally adequate individualized custody hearing before a neutral decisionmaker with authority to order release, with Respondents bearing the burden by clear and convincing evidence and the decisionmaker required to consider less restrictive alternatives;

L. Require immediate release if Respondents cannot timely provide such an alternative hearing;

M. Prohibit Respondents from transferring Petitioner outside the Central District during the pendency of this action absent advance notice and further order of this Court;

N. Require the return of Petitioner's identification documents and personal property upon release;

O. Retain jurisdiction to enforce the writ and any prospective relief; and

P. Grant such other and further relief as law and justice require.

Dated this 1st day of October, 2026.

_______________________
Carlos Barrios

## VERIFICATION BY PETITIONER PURSUANT TO 28 U.S.C. § 2242

I, Carlos Barrios, am submitting this verification on behalf of Carlos Alexander, who is currently detained by the U.S. Department of Homeland Security at the DESERT VIEW ANNEX in Adelanto, California. Petitioner is being held under conditions that severely restrict or prevent meaningful communication with the outside world.

As a result, he is unable to review or sign this petition personally or to prepare and file it on his own behalf.

I have communicated with Petitioner to the extent possible and have obtained the factual information contained in this Petition from my direct knowledge, records, and reliable sources. I hereby verify that, to the best of my knowledge and belief, the factual statements contained in the attached Petition for Writ of Habeas Corpus are true and correct, and that I could testify to those facts if called upon to do so.

Date: 10/1/2026

________________________

Carlos Barrios